# STATE v. WITT'S MARKET HOUSE, INC.[1]

April 20, 1934.

No. 29,868.

*Reed & Bergerud,* for appellant.

*R. S. Wiggin,* City Attorney, and *Leo P. McHale,* Assistant City Attorney, for the state.

*PER CURIAM.*

Defendant, engaged in the retail sale of food in five stores in Minneapolis, was convicted of a violation of a 1932 health ordinance of that city and was fined ten dollars. The portion of the ordinance claimed to have been violated was:

"All fresh or fresh-frozen meats, fresh or fresh-frozen fish, * * * shall be kept in the above described properly constructed refrigerator or cooling room at all times when not actually being handled for sale or displayed for sale, during the usual hours of business that the said meat market, etc., is open and operating, and no such article above enumerated shall be permitted to remain in any show case, display case, or other fixture except when actually handled for sale or displayed for sale to the customer."

The alleged violation occurred in one of the defendant's stores. The complaint charged only that defendant permitted meats and

[1]Reported in 254 N. W. 596.

fish to be kept in a refrigerator counter other than during the usual hours of its business. It stands admitted that defendant at the time and place stated kept such food products in refrigerator display cases. These cases were each 10 feet long by 30 inches wide and 2 feet high. They were cooled by a separate cooling unit which can be regulated and maintained at any desired temperature down to 10 degrees above zero, Fahrenheit. The cases are insulated with cork, lined with procelain, and inclosed with double thickness of glass. The equipment in the store referred to cost approximately $5,000 or $6,000 and in all of defendant's stores approximately $20,000. In the one store in question defendant employed between 12 and 20 butchers behind the cases. It has a large cooling room in the basement which is 130 feet by 30 feet and is cooled by another cooling unit separate from that cooling the display cases. Approximately 2,000 pounds of meat and fish products were kept in the cases at all times upon about 200 platters. To remove such products to the basement cooling room and back again to the refrigerator cases twice a day would require ten and a half hours for one man each day in that one store.

Six witnesses produced by defendant, one of them a well known doctor and teacher at the state university, who was an expert in chemical engineering and food preservation, particularly of meats and fish, testified that the display cases, cooled as they were, could preserve meat and fish as well as could the cooling room. Two of the witnesses said that these display cases were better in that respect. There was no evidence to the contrary on behalf of the state. The only reason defendant had a cooling room was for the storing of a surplus supply of meat and fish. The doctor stated that the public health would be benefited by leaving the meat and fish in the display cases as they were left rather than by handling and removing them back and forth from the basement twice a day; that in such removal there would be more likelihood of contamination and the hastening of the process of putrefaction or decomposition. It was not contended that the display cases were kept in an uncleanly condition or at an improper temperature.

Concededly the object in passing the ordinance was the preservation of public health. The evidence, uncontroverted, establishes that public health would not be preserved or promoted in any way by requiring the removal of the enumerated products from the display cases to and from the cooling room. Ordinances and statutes must be given a reasonable and practical construction in accordance with the intention of the lawmakers. 6 Dunnell, Minn. Dig. (2 ed. & Supp.) §§ 8939, 8943; Pittsburgh P. G. Co. v. Paine & Nixon Co. 182 Minn. 159, 234 N. W. 453. It is manifest that the city council, having in mind, as it is presumed it did, the preservation of public health, could not have intended that the quoted provision should apply to a situation such as is here presented. We give the ordinance a common sense and reasonable construction and hold that the defendant was unjustly convicted.

Reversed.

*STONE, Justice* (concurring).

I concur in the result.